STATE, ex rel. MACK CLAIRE, v. D. C. COLEMAN, as Sheriff of Dade County.

177 So. 288.

Division A.

Opinion Filed November 6, 1937.

Rehearing Denied December 10, 1937.

*Marx Feinberg* and *Rosenhouse & Rosenhouse,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment in habeas corpus proceedings remanding the petitioner in the court below to the custody of the Respondent Sheriff of Dade County, Florida.

Plaintiff in error was tried and convicted in the Criminal Court of Record in and for Dade County, Florida, under an information charging as follows:

"That Mack Claire of the County of Dade and State of Florida on the 18th day of May in the year of our Lord, one thousand nine hundred and thirty-seven, in the County and State aforesaid, having been lawfully subpoenaed and required to appear to testify before and in the Circuit Court of the Eleventh Judicial Circuit, in and for the County of Dade and State of Florida, in the case of the State of

Florida, Plaintiff, v. Dorsey Joyner, defendant, being common law case No. 250, and having appeared before said Court in response to the subpoena served upon him, and having been duly sworn by an officer of said Court then and there authorized by law to administer oaths to speak the truth concerning certain matters and things then and there being investigated and tried by said Court before a Jury, namely: the trial of Dorsey Joyner charged with murder in the first degree, did unlawfully, wilfully, knowingly, corruptly and falsely appear and depose as true in substance, tenor and effect, as follows, viz.:

"Q. 'And didn't you (meaning Mack Claire) testify before the Grand Jury (meaning the Grand Jury which returned the indictment against the defendant on trial in which Claire was testifying as a witness) that you (Mack Claire) were not there when Emma (Emma Robinson) came in; that you (Mack Claire) didn't know anything about the .38 (pistol) but that all you (Mack Claire) knew about it (meaning the .38 pistol) was that after the shooting (the murder) Fats told you (Mack Claire) that Emma had said that; didn't you (Mack Claire) swear that before the Grand Jury?'

"A. 'No, sir.'

"Q. 'And didn't you (Mack Claire) tell me (Joseph Otto) when I questioned you (Mack Claire) in the Grand Jury room before the Grand Jurors that after the shooting you were away at the time delivering groceries?'

"A. 'Yes, sir.'

"Q. 'That after the shooting when you came up there Fats had come to you and stated that he wanted you to help him out?'

"A. 'No, sir.'

"Q. 'And that he had said that Emma had told him

(meaning Fats) that Buster had gone after a .38 and wanted you to say that?'

"A. 'No, sir.'

"Whereas in truth and in fact, the said Mack Claire had theretofore testified before the said Grand Jurors that he was not there (at the place of shooting) when Emma came in and that he, the said Mack Claire, did not know anything about the .38 but that all he, the said Mack Claire, knew about this .38 was that after the shooting Fats told him that Emma had said that.

"And further in truth and in fact the said Mack Claire had theretofore testified before the Grand Jury aforesaid that Fats had come to him, the said Mack Claire, and said that he, the said Fats, wanted him, the said Mack Claire, to help him out and that he, Fats, wanted the said Mack Claire to say that he, the said Mack Claire, had heard Emma tell the said Fats that Buster had gone after a .38.

"That the matters aforesaid so unlawfully, willfully, knowingly, corruptly and falsely sworn in to substance, effect and tenor by the said Mack Claire were then and there material to the issue in the proceedings aforesaid and the same were false and untrue and the said Mack Claire well knew that the said testimony was false and untrue at the time he, the said Mack Claire, so testified; that the said Mack Claire did then and there willfully, knowingly, unlawfully, corruptly and falsely and intentionally commit the crime of perjury, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Florida, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida."

He applied, after judgment and sentence, to the Circuit

Court for writ of habeas corpus, which was granted. The return to the writ was:

"Now comes the Respondent in the above entitled cause, D. C. COLEMAN, as Sheriff of Dade County, Florida, and for answer to the writ of habeas corpus heretofore filed in said clause, says:

"That he has in his custody the Petitioner, MACK CLAIRE, and holds and detains the said Petitioner in the County Jail of Dade County, Florida, under and by virtue of a certain sentence entered by Judge Ben C. Willard, Judge of the Criminal Court of Record, on the 17th day of June, A. D. 1937, a copy of which said Sentence is hereto attached and made a part hereof.

"This Respondent further says that he now produces and has before your Honor the body of the said MACK CLAIRE, together with the said Sentence,"

The contention is that the information totally failed to charge the offense of Perjury because the information failed to allege that the Circuit Court of Dade County had jurisdiction to try the cause, in which trial it was alleged the perjury was committed, although it affirmatively appears from the allegations of the information that the Circuit Court did have jurisdiction to try the cause. See 48 C. J. 872. We are not called on to determine whether or not an order overruling a motion to quash would have constituted error for which reversal of the judgment should be awarded on direct review on writ of error.

To discharge under habeas corpus in cases of this sort the information must entirely fail to charge an offense. It is sufficient to withstand assault by habeas corpus if it appears from the allegations of the information that the court in which the perjury is alleged to have been committed had jurisdiction of the cause in which the testimony upon which

the charge of perjury is predicated was given. State, *ex rel.* Reed, *et al.,* v. Blitch, 97 Fla. 260, 120 Sou. 355; Wilds v. State, 79 Fla. 575, 84 Sou. 664.

In 48 C. J., *supra,* the rule is stated and supported by ample authority that "At common law an indictment for perjury committed in a judicial proceeding must affirmatively show the jurisdiction of the court over such proceedings, which may be done either by a direct allegation to that effect, or by the allegation of facts from which the jurisdiction appears. Where on the face of the indictment it appears that the court or judicial officer before whom the alleged perjury occurred did not have jurisdiction of the proceedings, the indictment is bad."

Therefore, it is not made to appear that reversible error is disclosed by the record. So the judgment should be and is affirmed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.